WILLIAM J. O'HARE and PATRICIA E. O'HARE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE
O'Hare v. Commissioner
Docket No. 6384-78.
United States Tax Court
T.C. Memo 1980-34; 1980 Tax Ct. Memo LEXIS 550; 39 T.C.M. (CCH) 1006; T.C.M. (RIA) 80034; February 6, 1980, Filed *550 William J. O'Hare, pro se. Christopher B. Sterner, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in income tax due from the petitioners for the taxable year 1974 in the amount of $10,131.00. The sole question for decision is whether the gain of $40,000.00 realized in connection with the purchase and resale of certain property is taxable as ordinary income or should be treated as a long-term capital gain. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioners William J. and Patricia E. O'Hare filed a joint Federal income tax return for the taxable year 1974 with the Director, Internal Revenue Service Center, Andover, Massachusetts. [1] Petitioners resided at Lagrangeville, New York, at the time the petition in this case was filed. During the taxable year 1974, and at the time of the trial of this case, William J. O'Hare (hereinafter referred to as petitioner) was *551 an attorney at law duly admitted to practice before the courts of the State of New York and maintained a law office in Poughkeepsie, New York. During the years 1973 and 1974, IX Ivestors, Inc., (hereinafter referred to as "Ivestors") was duly incorporated pursuant to the laws of the State of New York and was principally engaged in the business of buying and selling real estate. Richard Dean was then president of Investors. As such, he was responsible for determining what real estate transactions Investors would enter into and for arranging the execution of such transactions. During the years 1973 and 1974, petitioner was corporate attorney for Investors. On or about November 21, 1973, Investors entered into a contract for the purchase of certain real estate known as "Ferry Farm", located in the town of Livingston, County of Columbia and State of New York, at a price of $248,000.00. Investors paid the sellers $24,800.00 as a down payment upon execution of the contract. At that time, Investors planned to obtain a mortgage loan of $200,000.00 to finance the purchase of Ferry Farm. However, Investors initially was unable to secure this loan. Mr. Dean subsequently requested *552 that petitioner attempt to secure financing for the purchase of Ferry Farm and indicated that Investors would be willing to pay as much as $70,000.00 off the top of the proceeds of the future sale of Ferry Farm to anyone who would provide financing for the purchase. However, Investors was still unable to secure financing for the purchase of Ferry Farm. Mr. Dean then contacted the Federal Land Bank in Hudson, New York, regarding financing and was informed by the bank that it would be interested in supplying the required money. After reviewing the financial statement of Investors, the Federal Land Bank stated that it would require that someone of sufficient net worth to guarantee the mortgage loan cosign the mortgage note. At the request of Mr. Dean, petitioner agreed to cosign the mortgage loan from the Federal Land Bank. After the bank reviewed petitioner's financial statement, it indicated that before it could supply the needed financing, petitioner would be required personally to take title to the property. On or about December 28, 1973, Investors entered into a written agreement with petitioner which provided that Investors would assign its rights under the contract *553 to purchase the Ferry Farm to petitioner in return for which petitioner would obtain a mortgage commitment for $200,000.00, purchase the property in his own name and reconvey the Ferry Farm to Investors when a third party buyer for the property had been secured. In consideration for obtaining the $200,000.00 mortgage loan, petitioner was to receive a predetermined fee from Investors when the property was sold. Said fee was directly related to the period of time petitioner held title to the property.Petitioner would receive $25,000.00 if he held title for less than four months, $50,000.00 if he held title for four or more but less than either months, and $75,000.00 if he held title for more than eight months. The payments were not contingent on the realization of a profit by Investors from the future sale of the property. The agreement made no provision for the sharing of any loss. Investors was to pay off the $200,000.00 mortgage loan. The agreement also provided that Investors would pay all expenses incurred in connection with the property. Except for the original $200,000.00 loan, petitioner was prohibited from encumbering the property without the consent of Investors. *554 Petitioner obtained the mortgage loan from the Federal Land Bank in the amount of $200,000.00 and purchased Ferry Farm in his name for the price of $248,000.00. Investors paid all expensed relating to the purchase other than the $200,000.00. During the period of time that petitioner held title to the property, all expenses relating to the management and operation of the property, including real estate taxes and interest payments to the Federal Land Bank on the $200,000.00 loan, were paid by Investors. Petitioner did not participate in the management or the operation of the property. As a result of the efforts of Mr. Dean, on behalf of Investors, on or about August 14, 1974, Ferry Farm was conveyed to a third party for a purchase price of $335,000.00. In accordance with the agreement for the original financing of the property, petitioner was entitled to receive $50,000.00 from Investors. However, petitioner agreed to settle for $40,000.00 because Investors would have realized no profit on the entire Ferry Farm transaction if it was required to pay petitioner $50,000.00. On Schedule D of their joint income tax return for the taxable year 1974, the petitioners reported *555 the $40,000.00 received from Investors during 1974 as a long-term gain from the sale of a capital asset. Respondent would tax such amount as ordinary income. OPINION Investors had a contract to purchase certain property for $248,000.00. Investors had made a down payment of $24,800.00 but lacked sufficient funds to complete the purchase. Investors sought to obtain a mortgage loan of $200,000.00 but was unsuccessful. Petitioner, who acted as counsel for Investors, thereupon undertook to obtain the loan. After some negotiations, the lender agreed to make the loan if the property was put in the name of petitioner and the petitioner became the obligor. Investors and petitioner entered into an agreement whereby in consideration for obtaining the loan, petitioner would receive a stated amount upon the anticipated resale of the property predicated upon the length of time that the loan was outstanding. Investors paid the balance of the purchase price, interest, taxes and all other expenses relating to the property. When Investors was successful in obtaining a purchaser for the property, the proceeds were used to pay off the loan, pay petitioner a $40,000.00 agreed upon "fee", *556 and Investors kept the balance. To state the facts, which are not in dispute, is to resolve the issue. Petitioner merely extended his "credit" to Investors, for which he received a fee. While petitioner held title to the property, he did so as a part of the loan transaction. Petitioner never had any intention of buying the property in his own right and contributed none of his own funds, other than the loan. Investors not only paid the balance of the purchase price, but paid all other costs and expenses. Petitioner argues that he assumed the "risk of loss", that is the risk of nonpayment of the loan, and therefore should be treated as having an interest in the property. However, petitioner's risk did not differ from that of any lender. When the property was resold, the consideration received by petitioner was not measured by any resulting gain from the sale of the property but by the time that the loan had been outstanding. Petitioner merely received a "fee" for providing $200,000.00 of the funds used to buy the property. As such, the fee is taxable as ordinary income. , affd. , *557 cert. denied . Decision will be entered for respondent.
Footnotes
1. Patricia E. O'Hare is a petitioner herein solely by reason of having filed a joint return.↩